**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, | § § § | |
| v. | § § | CRIMINAL ACTION NO. 4:18-CR-598 |
| OMAR HERNANDEZ LOZANO, *Defendant*. | § § § | |
| UNITED STATES OF AMERICA, *Plaintiff*, | § § § | |
| v. | § § | CRIMINAL ACTION NO. 4:18-CR-522 |
| JUAN GABRIEL RUIZ-BAENA, *Defendant*. | § § § | |

## ORDER

Omar Hernandez Lozano ("Hernandez Lozano") and Juan Gabriel Ruiz-Baena ("Ruiz-Baena") are charged with illegal reentry into the United States in violation of 8 U.S.C. § 1326(b)(1) and § 1326(a) respectively. They seek to have their indictments dismissed because the Notices to Appear ("NTA") in their underlying deportations did not specify an exact time and location to appear. Hernandez Lozano claims that this omission voids not only his initial 1999 deportation, but all of his subsequent removals, while Ruiz-Baena makes similar claims as to his 2015 deportation. Consequently, they both claim this flaw in their underlying immigration proceedings deals a fatal blow to the Government's current attempts to prosecute them for illegal reentry.

## I.    Facts

### A.    Hernandez Lozano

The pertinent facts do not seem to be a source of controversy. Hernandez Lozano is a citizen of Mexico who entered into the United States in October 1997 pursuant to a non-immigrant visa. He was given permission to remain in the United States for six months. In April of 1999—well beyond the six-month period—he was arrested in Houston, Texas, for the offense of Endangering a Child. He later pleaded guilty to the lesser charge of deadly conduct, a Class A misdemeanor, and was sentenced to a term of imprisonment.

After being released from jail he was placed in the custody of the United States Immigration and Naturalization Service (hereinafter "INS"). While in INS custody, he was served with a Notice to Appear before an immigration judge for the purpose of a deportation hearing. The pertinent portion of that notice is reproduced below:

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at: To be calendared and notice
provided by the office of the Immigration Judge.   Notice will be mailed to the address provided by the respondent.
(Complete Address of Immigration Court, including Room Number, if any)
Office of the Immigration Judge,  15850 Export Plaza Drive,  Houston, Texas  77032
on _____ at _____ to show why you should not be removed from the United States based on the charge(s) set forth above.

_____
Assistant District Director for Investigations
(Signature and Title of Issuing Officer)

Date: July 24, 1999

Houston, Texas
(City and State)

As one can readily see, no hearing time or location was included in this notice. Instead the NTA indicates that the hearing will be calendared and notice will be given. This lack of specificity is the genesis of Hernandez Lozano's Motion to Dismiss the Indictment.

Hernandez Lozano signed the above notice to acknowledge receipt, waived his ten-day waiting period, and requested an immediate hearing. Five days later the hearing was held. He attended the hearing and conceded the underlying facts. The immigration judge ordered

Hernandez Lozano to be removed to Mexico—the country of which he is a citizen. He waived his appeal and was deported the next day.

Since that deportation Hernandez Lozano returned to the United States illegally at least five more times. He was deported/removed in 2000 after being convicted of Burglary of a Habitation, in 2007, in 2009 after being convicted of Assault on a Family Member, in 2011 after being convicted of Harassment of a Public Servant, and in 2014 after having been convicted of Illegal Reentry.

### B.    Ruiz-Baena

Juan Gabriel Ruiz-Baena also moves to dismiss the illegal reentry indictment against him. While the facts concerning his background and deportation are similar, they contain some differences from those concerning Hernandez Lozano.

Ruiz-Baena is a citizen of Mexico. He entered the United States illegally some time prior to September 27, 2015,[1] when he was arrested in Houston, Texas, for Assault Family Violence and Evading Arrest. Three days later he was released on bond from the Harris County jail to the custody of immigration officials. He received a Notice to Appear in which the blank for the location and time of the hearing was filled in with "[t]ime and date to be set." His actual NTA language is set out below:

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:
**Time and date to be set.**

*(Complete Address of Immigration Court, including Room Number, if any)*

on **To be set.** _____ at **To be set.** _____ to show why you should not be removed from the United States based on the
   *(Date)*     *(Time)*

charge(s) set forth above.       **J 0074 LEAL     SUPERVISORY DEPORTATION OFFICER**
                       *(Signature and Title of Issuing Officer)*

Date: **September 30, 2015**    **Houston Processing Center**
                              *(City and State)*

See reverse for important information

Form I-862 (Rev 08/01/07)

---

[1] While the time and place of his first illegal entry into the United States is not in evidence, there is an indication that he has a 2009 Misdemeanor Driving Under the Influence conviction out of Angelina County, Texas, which, if true, would indicate his entry into the United States as early as 2009.

Ruiz-Baena signed the notice and waived his right to the ten-day waiting period.

On October 7, 2015, he was warranted back to state custody to deal with the two pending criminal charges. On October 27, he pleaded guilty to both state charges and was sentenced to 80 days in jail on each count to run concurrently. While Ruiz-Baena was in state custody, the immigration proceedings were suspended. When Ruiz-Baena was released from state custody on November 4, 2015, he was once again turned over to the immigration authorities and was re-calendared.

His deportation hearing was held on December 17, 2015. He attended the hearing, participated, and was ultimately ordered to be deported. He waived his right to appeal this order and was deported on December 21, 2015.

Ruiz-Baena re-entered the United States some time thereafter and was once again arrested for assault on September 25, 2017. This time he was charged with a third-degree felony assault on a family member. He pleaded guilty on November 9, 2017 to the assault charge and was sentenced to two (2) years in prison. After serving this sentence and being released to federal immigration authorities, Ruiz-Baena was charged with the instant offense.

II.    **Claims of the Parties**

Hernandez Lozano claims that all his deportations (except for the original one) relate back to or are reinstatements of his 1999 removal and that his original 1999 removal was defective due to the lack of a designated time and place on the NTA. He claims that because of this defective notice, the immigration court lacked subject matter jurisdiction and thus his 1999 deportation was invalid and void. Consequently, he argues that there is no valid removal on which to base an illegal reentry indictment. Ruiz-Baena claims his 2015 deportation was void and the pending illegal reentry indictment are defective for the same reasons.

The United States ("Government") argues that these claims distort the two Supreme Court cases upon which Defendants rely and that not only were both Defendants informed of the date, time, and location of their respective hearings, but it is beyond dispute that each attended and participated. As a result, the Government contends that whatever ambiguities or defects may have existed in the original notices were cured by subsequent actual notice and that each immigration judge had jurisdiction when each Defendant was ordered deported. Further, the Government argues that these motions to dismiss the indictments are impermissible collateral attacks on the orders of removal and as such are contrary to 8 U.S.C. § 1326(d).

Both sides cite multiple court decisions which support their respective positions. Consequently, this Court has a number of different opinions from which to seek guidance. (See Appendix "A" for a list of opinions which support the position of the Defendants and Appendix "B" for a list of opinions supporting the Government's position.)

## III. Discussion

### A. Supreme Court Authority

While this Court has reviewed quite a number of opinions from a wide variety of different jurisdictions, the obvious starting point is the two Supreme Court cases underlying the Defendants' position: *Pereira v. Sessions*, 138 S. Ct. 2105 (2018) and *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987).

While *Pereira* is not a criminal case, it is the genesis of the Defendants' arguments. In *Pereira*, the Supreme Court reviewed a Notice to Appear containing "notice" provisions similar to those cited in the instant cases but in a civil context. The exact question the Court answered was framed by Justice Sotomayor, the author of the majority opinion:

> Accordingly, the dispositive question in this case is much
> narrower, but no less vital: Does a "notice to appear" that does not

specify the "time and place at which the proceedings will be held," as requested by § 1229(a)(1)(G)(i), trigger the stop-time rule?

Thus, the basic issue was whether ". . . if the Government serves a noncitizen with a document that is labeled 'notice to appear,' but the document fails to specify either the time or the place of the removal proceedings, does it trigger the stop-time rule [found in 8 U.S.C. § 1229b(d)(1) and which stops the time for which an alien might qualify for cancellation of removal]." *Id* at 2110. It is important to note that Pereira never received any notice of the time and place of the hearing and as a consequence did not attend the hearing.

The Supreme Court held that

> . . . common sense compels the conclusion that a notice that does not specify when and where to appear for a removal proceeding is not a "notice to appear" that triggers the stop-time rule. *If the three words "notice to appear" mean anything in this context, they must mean that, at a minimum, the Government has to provide noncitizens "notice" of the information, i.e., the "time" and "place," that would enable them "to appear" at the removal hearing in the first place.* Conveying such time-and-place information to a noncitizen is an essential function of a notice to appear, for without it, the Government cannot reasonably expect the noncitizen to appear for his removal proceedings. To hold otherwise would empower the Government to trigger the stop-time rule merely by sending noncitizens a barebones document labeled "Notice to Appear," with no mention of the time and place of the removal proceedings, even though such documents would do little if anything to facilitate appearance at those proceedings. " 'We are not willing to impute to Congress . . . such [a] contradictory and absurd purpose,' " *United States v. Bryan*, 339 U.S. 323, 342, 70 S.Ct. 724, 94 L.Ed. 884 (1950), particularly where doing so has no basis in the statutory text.

*Pereira v. Sessions*, 138 S. Ct. at 2115-2116 (emphasis added). The majority opinion emphasized that the Court was only answering the narrow question posed to it:

> It therefore follows that, if a "notice to appear" for purposes of § 1229(b)(1) must include the time-and-place information, a "notice to appear" for purposes of the stop-time rule under § 1229b(d)(1) must as well. After all, "it is a normal rule of statutory construction

that identical words used in different parts of the same act are intended to have the same meaning." *Taniguchi v. Kan Pacific Saipan, Ltd.,* 566 U.S. 560, 571, 132 S.Ct. 1997, 182 L.Ed.2d 903 (2012) (internal quotation marks omitted).

*Id.* at 2115. The instant cases obviously do not involve the stop-time rule.

*Mendoza-Lopez* is a criminal case that discusses the very statute under which Hernandez Lozano and Ruiz-Baena are charged. In that case, the Supreme Court addressed whether a defendant in a § 1326 case could collaterally attack his prior deportation. In that case it was conceded, for purposes of the appeal, that the group of deportees, including the Respondent, were deported in proceedings that did not comport with due process requirements. Because the prior deportation is an element of a 1326 violation, the Court held that if the prior deportation involved a lack of due process, the Respondent could collaterally attack the current illegal reentry prosecution. Many courts throughout the nation have subsequently reached similar conclusions if there were underlying due process deprivations in the deportation process.

### B.      The Application of These Supreme Court Decisions to the Instant Cases

Defendants' attack on their pending indictments really involves two interrelated questions: 1) Can they collaterally attack their prior removals in this 1326 criminal case; and 2) Are their prior deportations void? The Court will take them in reverse order.

### 1.      The Validity of The Prior Removals

Defendants essentially claim that *Pereira* stands for the proposition that a NTA without the exact time and date of the deportation hearing renders the entire hearing process jurisdictionally fatal. They contend that if the notice was flawed, then the immigration judge lacked jurisdiction and any subsequent deportation is void and of no effect. Moreover, their argument further suggests that this notice, if initially defective, cannot later be remedied by actual notice. In support of their contentions Defendants cite an array of district court cases from

throughout the country including many from this Circuit and this District.[2] As the reasoning in support of Defendants' position is fairly consistent between cases, this Court will address their reasoning generally through the discussion of one or two cases, as well as the applicable statutory and regulatory framework.

Initially, 8 U.S.C. § 1229(a), which sets the requirements for the contents of a NTA, states:

> In removal proceedings under section 1229(a) of this title, written notice shall be given in person to the alien . . . specifying the following: . . .

> (G)(i) the time and place at which the proceedings will be held.

Current immigration regulations provide that "jurisdiction [in the immigration court] vests . . . when a charging document is filed with the Immigration Court." 8 C.F.R. § 1003.14(a). Some courts have concluded that if the initial Notice to Appear is lacking in any manner, it does not constitute a Notice to Appear. If it does not constitute a Notice to Appear, then those courts conclude the immigration judge did not have jurisdiction. Without the removal must be void. If the removal is void, the alien cannot subsequently be prosecuted for illegal reentry. *See e.g.*, *United States v. Pedroza-Rocha*, No. 3:18-CR-1286, 2018 WL 6629649 (W.D. Tex. Sept. 21, 2018); *United States v. Virgen-Ponce*, 320 F. Supp. 1164 (E.D. Wash. 2018); *United States v. Leon Gonzales*, No. 3:18-CR-2593, Dkt. No. 32 (W.D. Tex. Nov. 20, 2018); *United States v. Santiago Tzul*, No. 4:18-CR-521, Dkt. No. 35 (S.D. Tex. Dec. 4, 2018). These cases necessarily entail a broad reading of *Pereira* in that they explicitly hold that the Supreme Court found that no jurisdiction exists if a specific time and place is not included on the initial NTA.

This Court cannot agree with that basic proposition because the Supreme Court never made such a holding. In fact, it is clear that the majority opinion was purposefully narrow. The

---

[2] See Appendix "A"

word "jurisdiction" does not appear anywhere in the *Pereira* majority opinion. To read that requirement into the majority's opinion either assumes that the majority of the Supreme Court did not understand the significance of that term or that they were purposefully trying to hide the opinion's real meaning from the rest of the federal judiciary. This Court will not presume either. If the Supreme Court had wanted to reach this result it could have easily held that the failure to include the time and place of a hearing in the NTA is jurisdictional. It did not.

Indeed, the Fifth Circuit has already noted that *Pereira* is to be narrowly read:

> The Supreme Court's recent decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), does not impact this conclusion. As the Supreme Court emphasized, "[t]he narrow question in [that] case" was whether a NTA that does not specify the time or place of the removal hearing triggers the "stop-time rule" for purposes of a cancellation of removal. *Id.* at 2109–10; *see also id.* at 2113 ("[T]he dispositive question in this case is much narrower[.]"). But cancellation and reopening are two entirely different proceedings under immigration law with different standards of review. *Compare Tula-Rubio v. Lynch*, 787 F.3d 288, 290–91 (5th Cir. 2015), *with Hernandez-Castillo*, 875 F.3d at 203–04.

> \* \* \*

> Because the issues in this case pertain only to reopening, *Pereira*'s rule regarding cancellation is inapplicable. *See, e.g., Ramat v. Nielsen*, 317 F. Supp. 3d 1111, 1116–17 (S.D. Cal. 2018) (declining to read *Pereira* as applying more broadly than in stop-time rule cancellation cases); *United States v. Ibarra-Rodriguez*, No. CR-18-190-M, 2018 WL 4608503, at \*3 (W.D. Okla. Sept. 25, 2018) (finding *Pereira* distinguishable because "the 'stop-time rule' [was] not at issue" in the case).

*Mauricio-Benitez v. Sessions*, No. 17-60792 (5th Cir. Nov. 8, 2018) at note 1.

If *Pereira* is inapplicable to a motion to reopen removal proceedings—which are factually and legally more similar to *Pereira*'s cancellation scenario than a 1326 illegal reentry prosecution—logic dictates *Pereira* does not control a criminal prosecution wherein the defendant not only had notice, but attended his removal proceeding.

Other courts have noted the same hole in the Defendants' argument. For example:

In *Pereira*, the Supreme Court addressed whether an NTA that does not specify the time and place of the removal hearing triggers the "stop-time rule," which impacts an immigrant's eligibility for certain forms of relief. *Id.* at 2109–10, 2113. The Supreme Court held that an NTA that lacks this information does not trigger the rule. *Id.* at 2113. <u>The Supreme Court did not discuss the issue of jurisdiction.</u> *Id.* at 2107.

*Pereira* is distinguishable on two grounds. First, it addresses the "narrow question" of whether a defective NTA triggers the "stop-time rule" in determining relief under the immigration laws. *Id.* at 2109–10. Second, the appellant in that case never received notice of his hearing and never appeared for or participated in that hearing. Here, the "stop-time rule" is not at issue. Moreover, despite the statutory defect in his initial NTA, Defendant appeared for his hearing on October 19, 2000, and at the hearing had an opportunity to be heard. Defendant was then personally served with a Notice of Hearing indicating the date, time, and place for his second and third hearings, where he also appeared and had an opportunity to be heard.

In short, given that Defendant appeared for his initial removal hearing on October 19, 2000, along with two subsequent hearings, any statutory defect in the initial NTA was cured. Because the NTA's defect was cured, Defendant's due process rights were not violated.

*United States v. Ornelas-Dominguez*, Case No. 5:18-CV-00110-CJC (C.D. Cal. Aug. 10, 2018) (emphasis added).

This Court finds the opinion in *United States v. Cortez*, No. 6:18-CR-22, 2018 WL 6004689 (W.D. Vir. Nov. 15, 2018), to be most instructive. Facing similar facts, the court found the NTA failed to specify a time and place of the hearing. It then proceeded to analyze the effect of this failure. Its analysis of the jurisdictional issue concluded that neither the language of the pertinent legislation nor the dictates of the Supreme Court supported the proposition that the deportation of an individual was void for lack of jurisdiction due to the failure to list a time and place in the initial NTA.

Neither *Pereira* nor 8 U.S.C. § 1229(a) control when and how subject matter jurisdiction over a removal proceeding vests in an immigration court.

\* \* \*

> *Pereira* and 8 U.S.C. § 1229(a)(1) concern the required content of notices to appear . . . and neither . . . address the immigration court's subject matter jurisdiction over the proceeding.

*Id*. at \*3. That court held that "neither *Pereira* nor 8 U.S.C. § 1229(a) control when and how subject matter jurisdiction over a removal proceeding vests in an immigration court. Rather, separate federal regulations promulgated by the Attorney General dictate when and how an immigration court gains subject matter jurisdiction." *Id.*

Specifically the court noted that Congress explicitly granted the Attorney General the authority to establish such regulations as he/she determines to be necessary for carrying out the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1103(g)(2).

> For all proceedings "initiated after April 1, 1997," a "charging document" is defined by a separate regulation to "include a Notice to Appear." 8 C.F.R. § 1003.13. Yet another regulation—8 C.F.R. § 1003.15(b)-(c)—lists the specific items that should be included in a notice to appear filed with the immigration court for jurisdictional purposes. But neither § 1003.15(b) nor § 1003.15(c) list the time and date of the removal proceedings as required criteria for a notice to appear filed with the immigration court for jurisdictional purposes. Moreover, neither § 1003.15(b) nor § 1003.15(c) cross-reference 8 U.S.C. § 1229(a)(1).

> By contrast to these regulations concerning the required content of notices to appear filed with the immigration court for jurisdictional purposes, *Pereira* and 8 U.S.C. § 1229(a)(1) concern the required content of notices to appear "given . . . to the alien" either in person, by mail, or by delivery to the alien's counsel. Section 1229(a)(1)(A)-(G) lists ten items that must be specified in notices to appear given to the alien, including "[t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i). Neither §1229(a)(1) nor *Pereira* address the immigration court's subject matter jurisdiction over the proceeding.

*Id.*

This Court agrees. If jurisdiction existed, then the arguments of Hernandez Lozano and Ruiz-Baena necessarily collapse.

### C.    Any Statutory Deficiencies Were Cured

While it is a basic proposition of federal jurisprudence that parties cannot confer subject matter jurisdiction where none exists, and while it is likewise clear that the initial NTAs did not contain a time and place designation, in the instant cases both NTAs were supplemented and cured by actual notice. Both Defendants not only had notice, but both appeared and participated. This Court rejects the argument that actual notice cannot cure an initially deficient NTA.

Specifically, 8 C.F.R. § 1003.14(a) states that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." Charging documents were filed in both of these two cases. One cannot draw a hint from this regulation that the lack of a time and location on the initial notice is jurisdictional or fatally defective to subject matter jurisdiction or that actual or subsequent notice cannot cure information the initial NTA lacks.

Obviously, a complete lack of notice, as occurred in *Pereira*, would trigger due process concerns. Due process requires notice and an opportunity to be heard. Each Defendant herein was afforded both. In fact, both Defendants requested expedited hearings and both knowingly waived their appeals. *See Chambers v. Mukasey*, 520 F.3d 445 (5th Cir. 2008) (actual notice and appearance waived any challenge to the NTA). This very argument has been addressed in the context of *Pereira* in the Ninth Circuit by an Arizona District Court and reached the same conclusion. *United States v. Arreola-Zambrano*, No. CR-18-01391-001-PHX-OJH, Dkt. No. 40 (D. Ariz. Nov. 16, 2018).

> Notably, the Supreme Court did not disturb the well-settled precedent that an original defective notice to appear may be cured by a subsequent notice of hearing. *See Popa v. Holder*, 571 F.3d 890, 895-96 (9th Cir. 2009) (collecting cases) ("We hold a Notice to Appear that fails to include the date and time of an alien's deportation hearing, but that states that a date and time will be set later, is not defective so long as a notice of the hearing is in fact later sent to the alien").

> Notably, in *Popa*, the Ninth Circuit concurred with the Fifth, Seventh and Eighth Circuits in announcing its holding. (*Id.*)

*Id.* at 4. In the instant cases both Defendants received actual notice.

### D.    Compliance with § 1326(d)

Both Defendants had the right and opportunity to appeal their removal. Both concede they waived these appellate rights and did not appeal their respective orders of deportation.

A defendant cannot collaterally attack his/her deportation in a subsequent § 1326 prosecution unless he/she can demonstrate that he/she: 1) exhausted his/her administrative remedies; 2) was improperly deprived of judicial review; and 3) the entry of the removal order was fundamentally unfair. *United States v. Cordova-Soto*, 804 F.3d 714, 719 (5th Cir. 2015). Defendants must prove all three prongs in order to collaterally attack their removals.

Defendants basically concede their failure to comply with § 1326(d); yet maintain their non-compliance is excused. Their contention is based on two overlapping arguments. First, they maintain that because a prior removal is an element of a § 1326(a) offense, they are always entitled to attack an element of the offense of which they are charged: reentry in violation of an existing removal order. Second, they argue that if the immigration court that ordered their removal did not have jurisdiction, then their deportations were void *ab initio* and cannot be the basis for prosecution for illegal entry. This, of course, is based on their expansive reading of *Pereira* which the Court has already discussed.

They also rely, however, on the Supreme Court's language and holding in *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987). There the Court held that due process requires that a defendant possess "some meaningful review of immigration proceedings." *Id.* at 838.

> The Supreme Court [in *Mendoza*] then stated that "[d]epriving an alien of the right to have the disposition in a deportation hearing reviewed in a judicial forum requires, at a minimum, that review be made available in any subsequent

proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense." *Id.* at 839. The *Mendoza* decision established three requirements to satisfy this constitutional imperative, and Congress subsequently codified these requirements by amending § 1326 to add subsection (d). *See United States v. Lopez-Vasquez*, 227 F.3d 476, 483 n.13 (5th Cir. 2000). Importantly, before this amendment, the Supreme Court in *Mendoza* concluded that § 1326 contained no avenue for reviewing the underlying judicial proceeding. The *Mendoza* decision established a review process for the first time, and the amendment codifying *Mendoza* [present day §1326(d)] now represents the sole avenue for such a challenge.

*United States v. Escobar-Espinosa*, 1:18-CR-842 (S.D. Tex. Dec. 4, 2018) (Rodriguez).

In *Mendoza* the Supreme Court found that the immigration judge permitted appellate waivers that "were not the result of [the defendant's] considered judgments" and that the defendants "were deprived of judicial review of their deportation hearings." *Id.* at 840. Defendants here do not contend that they were so deprived. The facts before this Court support the opposite conclusion.

To avoid the § 1326(d) requirement, Defendants rely on their void *ab initio* argument again predicated on their overly expansive reading of *Pereira*. This Court finds that, at best, their argument supports the conclusion that their deportations were voidable, not void. In so holding, this Court finds the reasoning concerning § 1326(d) by Judge Orlando Garza in *United States v. Zapata-Cortinas*, No. SA-18-CR-00343-OLG, 2018 WL 6061076 (W.D. Tex. Nov. 20, 2018), to be persuasive. In that decision, the court first addressed the very same argument that is being made here.

Thus, according to Defendant, jurisdiction did not vest in the immigration court because no *valid* charging document was filed in this case. 8 C.F.R. § 1003.14(a); *DeLeon-Holguin v. Ashcroft*, 253 F.3d 811, 815 (5th Cir. 2001) ("[R]emoval proceedings commence when the [Department of Homeland Security] files the appropriate charging document with the immigration court."). *Because orders exceeding a court's jurisdiction may be void, Defendant contends that § 1326(d) need not necessarily be satisfied in order to collaterally attack the prior Removal Order. See* docket no. 40 p. 9; *see also Matter of Reitnauer*, 152 F.3d 341, 344 n.12 (5th Cir. 1998) ("It is true that (1) jurisdictional defects render a judgment

14

void, and (2) void judgments are subject to collateral attack."); *Puc-Ruiz v. Holder*, 629 F.3d 771, 782 (8th Cir. 2010) ("When the [immigration judge] lacks jurisdiction, [the judge's] decisions are nullities.") Multiple district courts (including at least two in this District) have adopted this line of reasoning in the period since *Pereira*, and those courts have exempted defendants from satisfying § 1326(d)'s requirements because "an element of illegal reentry under § 1326" is not satisfied when the underlying removal order is void. *Alfredo-Valladares*, No. 1:17-CR-156-SS, docket no. 44 p. 17; *Pedroza-Rocha*, No. EP-18-CR-1286-DB, docket no. 53 p. 9 (quoting 8 U.S.C. § 1326(a)(1)) (holding that a "void removal means [defendant] was not 'removed' as a matter of law" and "the Government cannot satisfy the plain language of § 1326, which applies only to noncitizens who reenter the United States after having been 'denied admission, excluded, deported, or removed.'"); *Ortiz*, 2018 WL 6012390, at *3-4 (holding that the Government cannot prove the "removal" element of the offense and stating that "[d]efendant need not satisfy section 1326(d)'s strict requirements because the Immigration Judge lacked jurisdiction from the outset.").

*Having considered both lines of arguments and the numerous decisions that have come out in the period since Pereira, the Court concludes that (i) a removal order that suffers jurisdictional defects may serve as the basis for a § 1326(a) prosecution, and (ii) a § 1326 defendant must satisfy the requirements of § 1326(d) in order to collaterally attack the underlying removal order.*

By enumerating the specific requirements that must be satisfied in order for a defendant to collaterally attack a prior removal order, § 1326(d) necessarily contemplates that flawed or invalid removal proceedings may still serve as the basis of a "prior removal" in a § 1326(a) prosecution if the requirements are not met. *Indeed, in United States v. Mendoza-Lopez, the Supreme Court noted that the language chosen by Congress when drafting § 1326 does not limit § 1326(a) prosecutions only to those cases in which the underlying removal was "lawful." 481 U.S. 828, 834-35 (1987). Instead, the Supreme Court held that the constitutional requirement of due process requires that, "at the very least, where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense." Id. at 838.*

\* \* \*

Accordingly, there is no constitutional, statutory or judicial doctrine that mandates that *all* collateral attacks on subject-matter jurisdiction must be entertained, and in fact, the express statutory language of § 1326(d) limits the exact scope of collateral attacks that are permissible. *See Lira-Ramirez*, 2018 WL 5013523 at *7 ("Congress made clear by adopting § 1326(d) that knowingly giving up the opportunity for judicial review in a removal proceeding precludes an alien from challenging the validity of the removal order in a § 1326 prosecution.")* Notably,

in *Castelan-Jaimes*, the Fifth Circuit affirmed a district court decision that had determined that a jurisdictional defect in the removal proceedings rendered the decision "voidable but not void." 575 Fed. App'x at 254. Because the defendant in *Castelan-Jaimes* had not challenged the BIA's non-authorized issuance of his removal order on direct appeal [as opposed to an order of an Immigration Judge], both the district court and the Fifth Circuit held that the defendant had not satisfied the requirements of § 1326(d) and his indictment should not be dismissed. *Id.*; *United States v. Castelan-Jaimes*, No. A-13-CR-111-SS, docket no. 27 p. 4 (W.D. Tex. May 13, 2013) *("[T]he BIA's removal order appears to the Court to have been voidable, not void, and it was incumbent upon [defendant] to appeal to the Fifth Circuit.").*

The Court believes the present circumstances closely parallel those found in *Castelan-Jaimes*. Here, Defendant received a deficient NTA, and thus, it appears the immigration judge issued a removal order that was outside of her authority and for which there was no formal, vested jurisdiction. However, prior to *Pereira*, the immigration judge certainly had an "arguable basis" for believing she had jurisdiction over Defendant's removal proceedings, and there was no "clear usurpation of power" in issuing the underlying Removal Order. *Thus, the legislative history and plain language of § 1326 and relevant Fifth Circuit demonstrate that Defendant is not automatically permitted to collaterally attack his Removal Order for want of jurisdiction. Instead, Defendant may only collaterally attack his Removal Order if he can satisfy the elements of § 1326(d). As discussed below, Defendant cannot do so in this case.*

*United States v. Zapata-Cortinas*, No. SA-18-CR-00343-OLG, 2018 WL 6061076, at *7-*10 (W.D. Tex. Nov. 20, 2018) (emphasis added).

This Court agrees. In the instant cases Defendants cannot prevail on any of the prongs of § 1326(d), despite the requirement that they must prevail on all three. The Defendants' sole argument in the instant cases is that the immigration judge did not have jurisdiction because of the lack of specificity in the initial NTAs. Both defendants were subsequently given adequate notice. They appeared and participated. They also had more than adequate opportunities for judicial reviews which they both rejected. They both knowingly waived their appellate rights and did not pursue either administrative or judicial remedies. They even admitted the allegations supporting their removals. Consequently, there was nothing fundamentally unfair about the deportations in either case.

## IV.   Conclusion

This Court denies the motions to dismiss the indictments in question. Neither the legislation passed by Congress nor the dictates of the Supreme Court suggest that the immigration judges in question in either case lacked jurisdiction. The Defendants had actual notice, appeared and participated in their respective hearings, and admitted their removability. At most, *Pereira* suggests that the removals in some circumstances might be voidable if the NTA lacked times and locations and if, as in *Pereira*, the immigrant did not get notice and could not appear. These defenses might be the basis of a conclusion that the removals were voidable, but they do render the proceedings in question here void. This Court holds that the lack of specificity in the NTAs in question do not render the proceedings to be *per se* void due to lack of jurisdiction. Even if the lack of a time and location in the NTA rendered these notices deficient, such that they were open to challenge, these deficiencies were cured by actual notice.

This Court further holds the Defendants cannot collaterally attack their removals as neither has met the requirements of § 1326(d). They have not even tried to show that they exhausted their administrative remedies or that they were deprived of their judicial appellate rights. Aside from their theoretical jurisdiction argument, the Defendants have not tried to demonstrate that any aspect of the removal proceedings or the subsequent entry of the removal order were fundamentally unfair. Therefore, the motions to dismiss the indictments are denied.

SIGNED at Houston, Texas this 15th day of January, 2019.

Andrew S. Hanen
United States District Court Judge

# Appendix A

## Cases Supporting the Dismissal of the Indictment

*United States v. Alfredo Valladares*, No. A:17-cr-156-SS, Dkt. No. 44 at 8 (W.D. Tex. Oct. 30, 2018)

*United States v. Erazo-Diaz*, No. CR-18-00331-001-TUC-RM (LAB), 2018 WL 6322168, at *4 (D. Ariz. Dec. 4, 2018)

*United States v. Leon-Gonzalez*, No. 3:18-cr-2593, Dkt. No. 32 (W.D. Tex. Nov. 20, 2018)

*United States v. Lopez-Urgel*, No. 1:18-cr-0310-RP, Dkt. No. 30 at 6–8 (W.D. Tex. Nov. 14, 2018)

*United States v. Ochoa-Oregel*, 904 F.3d 682, 685 (9th Cir. 2018)

*United States v. Ortiz*, No. 3:18-cr-00071-RWG, Dkt. No. 55 at 4–5 (D.N.D. Nov. 7, 2018)

*United States v. Pedroza-Rocha*, 3:18-cr-01286-DB, 2018 WL 6629649 (W.D. Tex. Sept. 21, 2018)

*United States v. Santiago Tzul*, Case 4:18-cr-00521 Dkt. No. 35 (S.D. Tex. Dec. 4, 2018)

*United States v. Vargas-Osorio*, No. 1:18-CR-289-RP, 2018 WL 6201957 (W.D. Tex. Nov 28, 2018)

*United States v. Virgen-Ponce*, 320 F. Supp. 3d 1164 (E.D. Wash. 2018)

# Appendix B

<u>**Cases Supporting the Denial of the Motion to Dismiss**</u>

*In re Bermudez-Cota*, 27 I.&N. Dec. 441, 443 (BIA 2018)

*United States v. Aguirre-Tello*, 353 F.3d 1199, 1208 (10th Cir. 2004)

*United States v. Fernandez*, No. 7:18-CR-11-BO-1, 2018 WL 4976804 (E.D.N.C. Oct. 15, 2018)

*United States v. Arreola Zambrano*, No. CR-18-01391-001-PHX-DJH, Dkt. No. 40 (D. Ariz. Nov. 16, 2018)

*United States v. Briones-Herrera*, No. CR-18-214-D, 2018 WL 5315211 (W.D. Okla. Oct. 26, 2018)

*United States v. Chavez*, No. 2:17-CR-40106-01-HLT, 2018 WL 6079513 (D. Kan. Nov. 21, 2018)

*United States v. Cortez*, No. 6:18-CR-22, 2018 WL 6004689 (W.D. Va. Nov. 15, 2018)

*United States v. Escobar-Espinosa*, 1:18-CR-842 (S.D. Tex. Dec. 4, 2018)

*United States v. Flores-Mora*, No. 18-CR-160-JL, 2018 WL 6050907 (D.N.H. Nov. 19, 2018)

*United States v. Garcia-Alvarez*, 2:18-cr-00142-FtM, 29CM (M.D. Fla. Oct. 30, 2018)

*United States v. Hernandez-Ruiz*, No. 1:17-cr-226-ELR (N.D. Ga. Sept. 21, 2018)

*United States v. Hernandez-Velasco*, No. CR-18-82-D, 2018 WL 5622285 (W.D. Okla. Oct. 30, 2018)

*United States v. Ibarra-Rodriguez*, No. CR-18-190-M, 2018 WL 4608503 (W.D. Okla. Sept. 25, 2018)

*United States v. Fernandez*, No. 1:18-CR-307 (LMB), 2018 WL 5929632 (E.D. Vir. Nov. 13, 2018)

*United States v. Larios-Ajualat*, No. 18-10076-JWB, 2018 WL 5013522 (D. Kan. Oct. 15, 2018)

*United States v. Lira-Ramirez*, No. 18-10102-JWB, 2018 WL 5013523 (D. Kan. Oct. 15, 2018)

*United States v. Malagamba-De Leon*, 5:18-cr-691 (S.D. Tex. Dec. 14, 2018)

*United States v. Maldonado-Abarca*, 18-cr-82-J (D. Wy. Oct. 31, 2018)

*United States v. Mendoza-Sanchez*, No. 17-cr-189-JD, 2018 WL 5816346 (D.N.H. Nov. 5, 2018)

*United States v. Morales-Hernandez*, No. CR-18-00365-TUC-RCC (JR), 2018 WL 4492377 (D. Ariz. Sept. 18, 2018)

*United States v. Munoz-Alvarado*, No. CR-18-171-C, 2018 WL 4762134 (W.D. Okla. Oct. 2, 2018)

*United States v. Ornelas-Dominguez*, No. 5:18-cr-00110-CJG, Dkt. No. 42 (C.D. Cal. Aug. 10, 2018)

*United States v. Ramirez*, No. 3:18-CR-00026, 2018 WL 6037540 (W.D. Va. Nov. 16, 2018)

*United States v. Rodriguez*, No. 18CR2911W0H, 2018 WL 6064861 (S.D. Cal. Nov. 20, 2018)

*United States v. Romero-Caceres*, No. 1:18-CR-354, 2018 WL 6059381 (E.D. Va. Nov. 19, 2018)

*United States v. Romero-Colindres*, No. 1:18-CR-00415, 2018 WL 5084877 (N.D. Ohio Oct. 18, 2018)

*United States v. Sandoval-Cordero*, No. EP-18-CR-2370-KC, 2018 WL 6253251 (W.D. Tex. Nov. 29, 2018)

*United States v. Saravia-Chavez*, No. 3-18-CR-16, 2018 WL 5974302 (W.D. Va. Nov. 14, 2018)

*United States v. Veloz-Alonzo*, 1:18-cr-202 (N.D. Ohio Sept. 18, 2018)
*United States v. Vigniero Mejia*, 18-cr-133-01-JL, 2018 WL 6050905 (D.N.H. Nov. 19, 2018)
*United States v. Zapata-Cortinas*, No. SA-18-CR-343-OLG, 2018 WL 6061076 (W.D. Tex. Nov. 20, 2018)

Some courts which denied the motions to dismiss the illegal reentry indictments either found or assumed the NTAs were defective and that the defects in question were jurisdiction, but denied the motions to dismiss for failure to satisfy the requirements of § 1326(d). *See e.g., United States v. Sandoval-Cordero*, No. EP-18-CR-2370-KC, 2018 WL 6253251 (W.D. Tex. 2018); *United States v. Briones-Herrera*, No. CR-18-214-D, 2018 WL 5315211 (W.D. Okla. Oct. 26, 2018), *United States v. Larios-Ajualat*, No. 18-10076-JWB, 2018 WL 5013522 (D. Kan. Oct. 15, 2018); *United States v. Lira-Ramirez*, No. 18-10102-JWB, 2018 WL 5013523 (D. Kan. Oct. 15, 2018), *United States v. Malagamba-De Leon*, 5:18-cr-691 (S.D. Tex. Dec. 14, 2018), *United States v. Zapata-Cortinas*, No. SA-18-CR-343-OLG, 2018 WL 6061076 (W.D. Tex. Nov. 20, 2018).